STATE OF RHODE ISLAND
COMMISSION FOR HUMAN RIGHTS

| | |
|---|---|
| In the Matter of<br><br>Diana Hudon<br>Complainant<br><br>Against<br><br>American Canadian Caribbean Line, Inc.<br>Respondent | RICHR No. 08 ESH 052-11/37<br>EEOC No. 16J-2007-00394 |

**AFFIDAVIT OF TRACY DAME**

I, TRACY DAME, being duly sworn, depose and state as follows:

1. I am a full-time employee of American Canadian Caribbean Cruise Lines, Inc. ("ACCL").
2. ACCL is a small, family-run business which provides cruises on two small cruise ships. There are approximately 8 full-time employees in its Warren, RI headquarters.
3. I have worked for ACCL for approximately nine years.
4. I currently work with two telephone operators who take customers' reservations.
5. ACCL's president, Nancy Blount hired Ms. Hudon in March, 2007. Ms. Hudon's first day was March 19, 2007.
6. Immediately, Nancy Blount and I noticed problems with Ms. Hudon's performance.
7. Ms. Hudon had a dour, unenthusiastic attitude when speaking to potential customers on the phone. Co-workers and co-workers' spouses noticed the problem and mentioned it to Nancy Blount and me.
8. Ms. Hudon spent long periods of time on the phone talking with friends, relatives and contractors who were then renovating her home.

9. Ms. Hudon often arrived late for work or left early. Though hired to work 40 hours a week, Ms. Hudon never once worked a 40 hour workweek. One week she worked as few as 19.75 hours. (See exhibit A.) This caused severe strain on the reservation operations.
10. Despite these problems, Ms. Hudon and I developed a working friendship, in part because we sat at desks approximately five feet apart. ACCL employees tend to choose to stay at ACCL for long-term employment because the work environment is positive and co-workers treat each other like family.
11. After Ms. Hudon had been employed for six weeks, ACCL president Nancy Blount instructed me to warn Ms. Hudon that her performance did not come close to meeting ACCL standards, that her demeanor on the telephone was driving away customers and that her poor attendance was placing her job in jeopardy.
12. I warned Ms. Hudon according to Ms. Blount's wishes.
13. Ms. Hudon said that she understood and would try to improve her performance.
14. Ms. Hudon's performance and attendance did not improve.
15. Despite these problems, I did my best to help Ms. Hudon. Our friendship remained limited to the office. However, on one occasion, my husband Doug and I went out to dinner and saw Ms. Hudon's husband, Jeremy.
16. On another occasion, Ms. Hudon invited ACCL employees to see a concert with some of her relatives. I attended. Besides those two occasions, I did not see Ms. Hudon outside of the office.
17. Once, my husband, Doug Dame, sent Ms. Hudon two small pornographic photographs through my cell phone as a joke.

18. I was talking with Ms. Hudon on my house phone at the time and informed Ms. Hudon that my husband sent the photographs.

19. One of the two photographs was signed "Doug".

20. Doug sent the photographs via Tracy Dame's personal cell phone after the work day was over while he, Ms. Dame and Complainant were at home.

21. Ms. Hudon thought the photographs were funny.

22. At no time during her employment did Ms. Hudon ever mention or discuss the photographs again.

23. After Ms. Hudon's work performance and attendance did not improve, Nancy Blount informed me that she wanted to terminate Ms. Hudon.

24. The week of June 11, Nancy Blount decided to terminate Ms. Hudon and instructed me to do so.

25. I terminated her on behalf of Ms. Blount on Wednesday, June 13, 2007.

26. At no time before or after her termination did Ms. Hudon ever mention or discuss any feelings of a harassing, hostile work environment.

Tracy Dame
TRACY DAME

Subscribed and sworn to before me this 31 day of October, 2007.

Carole Buffman
Notary Public
My Commission Expires 3/31/10